IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Christine LaLonde,

(Chapter 13)

Debtor.

Case No. 08-14761

MEMORANDUM DECISION

Christine LaLonde filed a chapter 7 petition, and when faced with the trustee's action to pursue preference recovery from her daughter and son-in-law, converted to chapter 13. The chapter 13 and chapter 7 trustees each objected to confirmation of the plan she proposed, and the chapter 7 trustee objected to certain claimed exemptions.

Ms. LaLonde is a realtor. In 1999, she and her sister, Janese Peleck, bought a condominium unit located at 232 Grand Canyon Drive in Madison as joint tenants. Three years later, the sisters bought a neighboring unit located at 238 Grand Canyon Drive, again as joint tenants. By 2006, the relationship between LaLonde and Peleck had deteriorated to the point that Peleck sued LaLonde in state court seeking a forced sale or partition of their condos.

To avoid trial, LaLonde filed under chapter 13. She dismissed that bankruptcy after the sisters worked out a settlement of the state case calling for one condo to be sold and the other either refinanced or sold. In accord with the settlement, LaLonde arranged to sell 232 Grand

1

Canyon to Tera and Brad Beisbier for $149,000. Tera Beisbier is LaLonde's daughter and Brad Beisbier is her son-in-law. LaLonde and the Beisbiers agreed that LaLonde would continue to live in the unit and pay monthly rent to the Beisbiers. The Beisbiers advanced the closing costs, but expected to be repaid from LaLonde's share of the closing proceeds.

A closing was held on September 6, 2007. The Beisbiers had already signed two notes and mortgages and did not attend the closing. The deed as initially drafted showed the grantees to be the Beisbiers as joint tenants. LaLonde claims that on the way to the closing, she realized that she had to be a unit owner to remain an officer of the condo association. She impulsively decided to have her name put on the deed. She called Brad Beisbier and asked whether he would mind. LaLonde assured him that she would have no interest in the property. He consented (or did not object). LaLonde did not speak to Tara Beisbier about this change prior to the closing.

At the closing, LaLonde asked the title company to add her name to the deed. Remarkably, the title company assented, and the recorded deed shows the property was conveyed to Brad and Tera Beisbier and Christine LaLonde as joint tenants. LaLonde claims it was never her intent to have any interest in the property. LaLonde did not sign, nor does her name appear on, either of the two mortgages given at closing.

The sale netted $36,978.34. LaLonde received $10,736.25, of which she transferred $10,370.23 to the Beisbiers as reimbursement of the closing costs. Peleck received $20,593.09. A separate fund of $5,649 was held in escrow and was eventually divided in November 2007, with $4,500 going to LaLonde and $1,149 going to Peleck.

The other condo—238 Grand Canyon—was sold in June 2008 in an arms' length sale. Peleck received all the proceeds, totaling $14,004. LaLonde testified that Peleck was paid an

2

outsize share of the proceeds to partially repay her for a home equity loan LaLonde had taken out to pay personal expenses.

LaLonde filed this case under chapter 7 on September 12, 2008. She claims that she did not believe she had any interest in 232 Grand Canyon, but scheduled a 1/3 joint tenancy interest in the property out of caution. LaLonde did not disclose the $10,370 she paid the Beisbiers after closing and stated that she had received no proceeds from the sale of either 232 or 238 Grand Canyon. Using the federal exemptions, LaLonde claimed a $2,500 homestead exemption and a total exemption of her vehicle and personal property.

In June 2009, the chapter 7 trustee initiated an adversary proceeding against Brad and Tera Beisbier to sell 232 Grand Canyon. The Trustee sought a determination that the condo was owned jointly among LaLonde and the Beisbiers. The trustee contended that the mortgage only attached to the Beisbiers' portion of the property and that an unencumbered 1/3 interest in the property belongs to the bankruptcy estate.

Shortly after the adversary proceeding was filed, LaLonde converted her case to chapter 13. LaLonde filed new schedules and, using state law exemptions, claimed a $40,000 homestead exemption in 232 Grand Canyon, a $1,200 motor vehicle exemption, and fully exempted her personal property. On September 30, LaLonde filed her chapter 13 plan. The plan proposes monthly payments of $280 for 48 months, for a total of about $13,000. Both the chapter 7 and chapter 13 trustees object to plan confirmation as failing the best interests test. Additionally, the chapter 7 trustee contends that the plan was filed in bad faith and that LaLonde improperly claimed certain exemptions. For the reasons stated below, the plan cannot be confirmed.

3

I.	**Best Interests**

Section 1325(a)(4) provides that the court shall confirm a plan if, and only if:

> "(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date"

Thus, if the trustee in chapter 7 by, *inter alia*, exercising his avoidance powers, could sufficiently enlarge the estate to create a distribution to general creditors greater than the proposed plan distribution, the plan cannot be confirmed. It would not be in the general creditors' best interest.

The plan proponent bears the burden of showing that the plan should be confirmed. This requires LaLonde to prove that the plan meets the best interests test. In other words, she must show that creditors in chapter 7 would have received no more than what her plan will pay—$13,000.

The Bankruptcy Code allows any "party in interest" to object to confirmation of a chapter 13 plan. 11 U.S.C. § 1324(a). Although the term is never defined in the Code, its use elsewhere suggests that the term is broad enough to include any party whose interests would be affected by a particular decision. See, e.g., 11 U.S.C. § 1109; see generally, 3 Collier on Bankruptcy, § 362.07[2]. Thus, both trustees qualify as parties in interest. If the plan is confirmed, the chapter 13 trustee must administer it; if confirmation is denied, the case may convert to chapter 7 for administration by the chapter 7 trustee. In any event, LaLonde failed to challenge either trustee's standing.

There is little doubt that this court must consider what the chapter 7 trustee could have achieved by his avoidance and sale powers. On its face, the language of § 1325(a)(4) seems to demand that a court conduct just this hypothetical inquiry, and the few courts confronting the

4

issue have agreed with this reading. See, In re Carter, 4 B.R. 692 (Bankr. D. Colo. 1980); In re Future Energy Corp., 83 B.R. 470 (Bankr. S.D. Ohio 1988); In re Larson, 245 B.R. 609 (Bankr. D. Minn. 2000). In Future Energy, for example, the court examined whether a chapter 11 plan met the best interests test of § 1129(a)(7). To make that judgment, the court considered the distribution that would have resulted had the chapter 7 trustee avoided an allegedly preferential transfer. 83 B.R. at 489-90.

Courts have generally held that a plan proponent must show that a trustee was not reasonably likely to have succeeded in an avoidance or sale action. See, In re Larson, 245 B.R. at 615 (best interests test required the court to determine whether a chapter 7 trustee "could be reasonably expected to succeed in setting aside the transfer"). To do so, at least one court has held that an objecting party must make a prima facie showing of likelihood of success, but then the debtor bears the burden of rebuttal. In re Carter, 4 B.R. at 694 (debtor had not met its burden of proof where creditors made an unrebutted prima facie showing that there was a "legitimately justiciable issue which could have be [sic] pursued by a liquidating trustee"). Thus, LaLonde must show that the chapter 7 trustee was not reasonably likely to avoid transfers or to benefit from selling the condo at 232 Grand Canyon.

## II.    Sale Proceeds

At issue are three preferential payments: the $10,370.23 paid to the Beisbers after closing, the $21,724.09 paid to Peleck from the sale of 232 Grand Canyon, and the $14,004 paid to Peleck from the sale of 238 Grand Canyon. Avoidable preferences are described in § 547(b):

> (b) . . . the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;

5

> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> > [ . . .]
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> 
> (5) that enables such creditor to receive more than such creditor would receive if—
> > (A) the case were a case under chapter 7 of this title;
> > (B) the transfer had not been made; and
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

LaLonde conceded that all the elements of a preference under § 547(b) were present. However, she asserts several defenses under § 547(c).

First, she alleges that the payments to Peleck were made in the ordinary course and thus excepted from avoidance by § 546(c)(2). This section provides:

> (c) The trustee may not avoid under this section a transfer—
> > [ . . .]
> > (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
> > > (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> > > (B) made according to ordinary business terms;

But precedent in this circuit rules out this defense. The Court of Appeals for the Seventh Circuit has noted that the purpose of § 547(c)(2) is to leave undisturbed "normal commercial and financial relationships" and to protect "recurring, customary" transactions. Kleven v. Household Bank, 334 F.3d 638 (7th Cir. 2003); see also, Strauss v. Milwaukee Cheese Wis., Inc., 112 F.3d 845 (7th Cir. 1997). The payments to Peleck, by contrast, were episodic, few in number, and of varying amounts. They were not for services or pursuant to any commercial relationship.

6

Rather, they were sale proceeds. LaLonde's contention that the payments were "ordinary course" because they were made pursuant to a settlement with her sister is similarly unavailing. When LaLonde paid pursuant to the settlement, she simply satisfied a contractual obligation owed Peleck.

LaLonde also asserts the preference to the Beisbiers was not avoidable because it was a contemporaneous exchange for new value. This defense is a non-starter. Section 547(c)(1) protects transfers to the extent

> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange

Here, there was no exchange. LaLonde acknowledges that the Beisbiers advanced her the closing costs. She also acknowledges that she reimbursed them that money out of the sale proceeds. LaLonde made no exchange; she simply borrowed money, then repaid it.

The debtor's burden has not been met. The chapter 7 trustee was reasonably likely to avoid the preferential transfers. The entire transfer to the Beisbiers of $10,370.23 appears to be avoidable. Similarly, the portion of the sale proceeds Peleck received as repayment of debts owed to her by LaLonde are probably avoidable. Under Wisconsin law, joint tenants are presumed to own equal shares in the property. Jezo v. Jezo, 23 Wis. 2d 399 (Wis. 1964) ("the fundamental concept of joint tenancy is that the joint tenants enjoy the estate equally during their lives, each having an undivided one-half interest in the property"). The unit at 232 Grand Canyon generated sale proceeds of $36,978.34. Had the sisters split the proceeds evenly, each would have received $18,489.17. LaLonde received only $15,236.25 ($10,736.25 at closing, and $4,500 later released from escrow), while the balance went to Peleck. Accordingly, the excess amount LaLonde chose to allocate to Peleck—$3,252.92—was probably avoidable. Similarly,

7

the sale of 238 Grand Canyon generated $14,004 in proceeds. Peleck received this entire amount. The half share that LaLonde could have claimed—$7,002—was also probably avoidable.

To be in the creditors' "best interest," LaLonde's plan would have to pay creditors at least as much as these avoidable preferences, or a total of $20,625.15. This is substantially more than what her plan currently provides.

### III.   Interest in 232 Grand Canyon

The other major issue raised is whether LaLonde has an interest in 232 Grand Canyon that could be sold to the benefit of the chapter 7 estate. As plan proponent, LaLonde must show that the chapter 7 trustee was not reasonably likely to have increased the bankruptcy estate by selling the condo. She has done so. Although this court need not determine the issue as a final matter, the evidence presented suggests that, at best, LaLonde's interest in 232 Grand Canyon was held subject to a constructive trust. Property held in constructive trust is not in the bankruptcy estate. See, U.S. v. Whiting Pools, Inc., 462 U.S. 198 (1983) (congress "excluded property of others held by the debtor in trust at the time of the filing of the petition"); see also, In re Flanagan, 503 F.3d 171 (2d Cir. 2007) ("any property that the debtor holds in constructive trust for another is excluded from the estate"); In re Howard's Appliance Corp., 874 F.2d 88 (2d Cir. 1989) (same).

A constructive trust is a creation of equity. Under Wisconsin law, a constructive trust will be imposed against a party if two elements are present: (1) a trust is needed to avoid unjust enrichment and (2) the party got title via fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or any form of unconscionable conduct. Wilharms v.

Wilharms, 93 Wis. 2d 671 (Wis. 1980); Gorski v. Gorski, 82 Wis. 2d 248 (Wis. 1978). The parties need not have intended to create a trust. Will of Kalicicki, 33 Wis. 2d 277 (Wis. 1967).

Wisconsin courts have found unjust enrichment and imposed a constructive trust if property equitably belongs to someone else. Wilharms v. Wilharms, 93 Wis.2d at 680. Here, the property equitably belongs to the Beisbiers. The Beisbiers offered to purchase the property with the understanding that LaLonde would rent the unit from them. LaLonde deviated from this plan at closing, when neither her daughter nor her son-in-law was present. Her son-in-law learned of the change only minutes before the closing; her daughter was not told. Further, LaLonde did not obligate herself on the mortgages the Beisbiers took out to facilitate the sale.

These facts suggest that LaLonde got title by mistake, abuse of a confidential relationship, or commission of a wrong. Additionally, although I need not reach the issue of whether her actions constituted fraud, the existence of the "five fingers" of fraud is apparent if not fully proved in this case.[1] LaLonde's testimony that she did not believe insertion of her name on a deed would create a property interest is incredible given that she is a licensed realtor. LaLonde arguably got title by mistake in that she was added to the deed against the Beisbiers' intent. Wisconsin caselaw suggests that in such a situation, a constructive trust is appropriate. See, e.g., Wilharms at n.2 (noting that "mistake as a grounds for the imposition of a constructive trust applies where property is conveyed to someone who was not intended to receive the property by the donor").

---

[1] As this court has previously recognized, there are five basic elements a plaintiff must prove (the "five fingers of fraud"): (1) a materially false representation made by the defendant; (2) defendant knew of the falsity; (3) defendant intended to deceive; (4) plaintiff justifiably relied on the representation; and (5) damage was the proximate result of the false representation. In re Zinck, 321 B.R. 916 (Bankr. W.D. Wis. 2005). Although this five element test is sometimes restated as a three, four, or even six element test, no functional differences exist between the tests.

9

Probably LaLonde also got title through abuse of a confidential relationship. Wisconsin courts have deemed a relationship "confidential" when parties share a long friendship or a familial relationship marked by mutual trust. Leontios v. PWS Lake Geneva Devel. Co., 316 Wis. 2d 411 (Wis. Ct. App. 2009). A confidential relationship can be inferred from a familial relationship. Id. Such a relationship is abused even if no wrongful intent was initially present. Joerres v. Koscielniak, 13 Wis. 2d 242 (Wis. 1961). Rather, it is enough that Party A relied on Party B's promise, and Party B then failed to perform. Id.

The Beisbiers are LaLonde's daughter and son-in-law and were evidently trying to help her in a difficult situation. They all agreed that the Beisbiers would own the property as joint tenants and LaLonde would become a renter. Even if LaLonde had no wrongful intent except to deceive the condo board, she failed to carry out her promise to relinquish title. Further, LaLonde's testimony suggested that the Beisbiers relied on her judgment in arranging the transaction, in particular on her expertise as a realtor. For example, when LaLonde told Brad Beisbier that inserting her name on the deed would not affect title, he evidently regarded his mother-in-law's assurance as sufficient.

Finally, even if LaLonde did not get title via fraud, mistake or abuse of a confidential relationship, her acts almost certainly qualify as "commission of a wrong." Although Wisconsin courts have never precisely defined this phrase, decisions have emphasized a flexible standard that simply looks for some sort of wrongful conduct. See, Krueger v. Rodenberg, 190 Wis. 2d 367 (Wis. Ct. App. 1994) (constructive trusts may be used in a variety of situations, including where property was obtained "by some form of wrongful conduct"). This broad catch-all category is wide enough to encompass LaLonde's acts.

### IV.  Good Faith

The chapter 7 trustee objects that the plan was not filed in good faith, as 11 U.S.C. § 1325(a)(3) requires.  The trustee cites discrepancies in LaLonde's schedules and her decision to convert to chapter 13 as evidence of bad faith.

The Court of Appeals for the Seventh Circuit has set forth a number of factors for a court to consider in determining whether a plan was proposed in good faith:

> (1) Does the proposed plan state secured and unsecured debts accurately?
> (2) Does it state expenses accurately?
> (3) Is the percentage of repayment of unsecured claims correct?
> (4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?
> (5) Do the proposed payments indicate a fundamental fairness in dealing with one's creditors?

In re Rimgale, 669 F.2d 426, 432-33 (7th Cir. 1982).  The court then distilled these factors in In re Schaitz, asking whether a debtor is "really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?"  In re Schaitz, 913 F.2d 452, 453-54 (7th Cir. 1990).  I am satisfied that LaLonde's plan evidences an intent to pay creditors.  The errors and omissions the chapter 7 trustee points out are either simple oversights or readily explainable decisions made by LaLonde in consultation with her counsel.  Further, LaLonde's conversion to chapter 13 is not by itself an expression of bad faith.  A chapter 7 debtor has a near-absolute right to convert to chapter 13 at any time. 11 U.S.C. § 706(a).

### V.  Exemptions

The chapter 7 trustee also objected to LaLonde's exemptions.  After conversion to chapter 13, LaLonde opted to use the state law exemptions.  The trustee objects that the debtor

11

waited to change her exemptions so as to shield her assets from the chapter 7 trustee. Although a debtor generally may amend her exemptions at any time before the case is closed, there are some limits on that power. Specifically, a debtor is not entitled to claim an exemption if she has concealed property or otherwise acted in bad faith. In re Yonikus, 996 F.2d 866 (7th Cir. 1993).

Bankruptcy Rule 4003(c) requires the objecting party to prove that an exemption was improperly claimed. Exemptions are to be liberally construed in favor of the debtor. See, In re Geise, 992 F.2d 651 (7th Cir. 1993). The chapter 7 trustee has not met this burden. I am satisfied that LaLonde opted to use the state exemptions to more completely protect her possible interest in 232 Grand Canyon, and that to do so was not bad faith. It is more likely that she sought to protect the Beisbiers from partition than that she expected to retain an asset of value to her.

Confirmation of the plan is denied. LaLonde may have 20 days in which to amend the plan and cure its deficiencies. Compliance with the computations of probable avoidance recoveries in this decision should not be seen as a guarantee of confirmation. Any amended plan will be scrutinized anew, and the parties may raise any appropriate objections. It may be so ordered.

Dated: May 7, 2010

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Christine LaLonde,

(Chapter 13)

Debtor.

Case No. 08-14761

ORDER

The Court having reached the conclusions of law contained in the memorandum decision filed this date, it is hereby ORDERED that confirmation of LaLonde's plan is DENIED, and LaLonde shall have 20 days to file an amended plan.

Dated: May 7, 2010

_____
ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE